UNITED STATES DISTRICT COURT            For Online Publication Only
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
CARMINE RIZZO,

                         Plaintiff,         **MEMORANDUM & ORDER**
    -against-                            13–CV–2680 (JMA)(ARL)

SUFFOLK COUNTY, POLICE DEPARTMENT OF
COUNTY OF SUFFOLK, INSPECTOR ROBERT
OSWALD, in his individual and official capacity,
SERGEANT THOMAS O'SHEA, in his individual and
official capacity, SERGEANT GIGANIC, in his individual
and official capacity, SERGEANT GREEN, in his
individual and official capacity, LIEUTENANT RIGGIO,
in his individual and official capacity, P.O. BRADSHAW,
in his individual and official capacity, P.O. GRUBBS, in
his individual and official capacity, EDWARD WEBER,
Commissioner of the Suffolk County Police Department,
in his individual and official capacity, and P.O. BILLY
SCHNEIDER, in his individual and official capacity,

                        Defendants.
-----------------------------------------------------------------------X

**FILED
CLERK**

9/6/2016 3:54 pm

**U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE**

**AZRACK, United States District Judge:**

      On May 2, 2013, plaintiff Carmine Rizzo commenced this action against defendants

Suffolk County (the "County"), Police Department of County of Suffolk (the "Department"),

Inspector Robert Oswald, Sergeant Thomas O'Shea, Sergeant Giganic, Sergeant Green, Lieutenant

Riggio, P.O. Bradshaw, P.O. Grubbs, Edward Weber, and P.O. Billy Schneider.  Plaintiff asserts

claims of: (1) discrimination, retaliation, and hostile work environment in violation of the

Americans with Disabilities Act, 42 U.S.C. § 1983 ("Section 1983"), and New York state law; (2)

violation of his Fourth Amendment rights under Section 1983; and (3) New York state law claims,

including assault, battery, defamation, intentional infliction of emotional distress, and negligence.

Defendants now move to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6)

for failure to state a claim.  For the reasons stated below, defendants' motion to dismiss is granted.

1

## I.    BACKGROUND

The following facts are taken from plaintiff's complaint and assumed to be true for the purposes of this motion.

Plaintiff was employed by the Department for approximately five and a half years, beginning in December 2007.  (Second Amended Complaint ("Compl.") ¶ 27, ECF No. 33.)  Prior to joining the Department, plaintiff worked for approximately five years as a Police Officer and Detective Specialist with the New York City Police Department.  (Id. ¶ 28.)

Plaintiff was initially assigned to work in the Department's 6th Precinct, located in Selden, New York.  (Id. ¶ 32.)  In January 2009, plaintiff responded to an emergency call involving a seven-year-old child that died during the course of plaintiff's emergency response.  (Id. ¶ 30.)  Plaintiff alleges that Grubbs and other officers berated him about his decision to close off a street to aid in the emergency response, (Id. ¶ 36), and that the hostility and harassment continued for two years.  (Id. ¶ 37.)  Plaintiff alleges that he "was never offered any medical treatment or counseling for the traumatic events," (Id. ¶ 38), although the complaint also alleges that during the following month plaintiff was directed to see the Suffolk County Psychologist (Id. ¶ 39).

Starting in December 2010, plaintiff alleges that on numerous occasions O'Shea and other defendants bullied and harassed him.  Plaintiff alleges that O'Shea repeatedly sent text messages and made comments regarding plaintiff's girlfriend (id. ¶¶ 40–41), and that O'Shea directed officers not to respond to plaintiff's calls for assistance on domestic violence calls (id. ¶¶ 41–42).  According to the complaint, in March 2011, Giganic approved and directed several fellow officers to hold an "intervention" with plaintiff, explained in further detail below.  (Id. ¶ 56.)  Giganic allegedly directed plaintiff to report to the Setauket Fire House, where he was surrounded by other officers who made disparaging comments, such as "You don't remember anything . . . you have

PTSD . . . your girlfriend sleeps around." (Id.)  In April 2011, plaintiff complained to his union delegate about these issues.  (Id. ¶ 59.)

In February 2011, an incident occurred after plaintiff inadvertently left his official memo book in a police vehicle (the "memo book incident").  (Id. ¶ 43.)  The memo book was ultimately sent to Oswald with a short note indicating that it was found by a "civilian."  (Id. ¶ 46.)  Grubbs allegedly admitted to plaintiff that he found the memo book and mailed it to the Department.  (Id. ¶ 56.)  Subsequently in April 2011, plaintiff complained to his union representative about the memo book incident.  (Id. ¶ 59.)

In May 2011, Oswald allegedly made several comments to plaintiff, including, "no more 301 (sick time) for you . . . they shouldn't have let you on this job . . . you should be psyched out . . . you're schitzo . . . you've got schizophrenia . . . they let a criminal and a rapist on this job . . . you're going full duty tomorrow, and you're going to see Dr. Mazer out east."  (Id. ¶ 65.)  Plaintiff was subsequently admitted to the emergency room and involuntarily transferred to the psychiatric ward after a suicide attempt.  (Id.)

Plaintiff remained out of work on sick leave, despite having requested a line of duty designation based on a diagnosis of Post-Traumatic Stress Disorder ("PTSD") dating back to January 2009.  (Id. ¶ 72.)  According to the complaint, defendants "refused to allow a line of duty designation" and forced plaintiff to use sick and vacation days, resulting in plaintiff's constructive discharge from his job.  (Id.)

In August 2011, plaintiff returned to active duty and transferred to the 4th Precinct. (Id. ¶ 74.)  Subsequently in November 2011, plaintiff received a letter from the police commissioner directing plaintiff to undergo the Department's psychological services treatment. (Id. ¶ 75.)  Plaintiff was then placed on administrative leave and put on desk duty.  (Id.)  Plaintiff

remained on desk duty until January 2013, at which point he was ordered to patrol duty for one day. (Id. ¶ 76.) Plaintiff further alleges that while on desk duty, "[d]efendants retaliated and harassed him by placing him on patrol so he could not go for treatment" for his PTSD condition after work hours. (Id.) According to the complaint, while plaintiff was on administrative leave he "could not perform overtime, make arrests, or in any way advance his career." (Id. ¶ 77.)

Beginning in June 2013, while working in the 4th Precinct, plaintiff alleges that he was harassed and bullied by Officer Schneider, whom plaintiff had worked with and been harassed by during his time in the 6th Precinct. (Id. ¶ 79.) This included at least one incident where Schneider threatened that plaintiff would be "psyched out" of the Department and attempted to punch plaintiff in the face. (Id. ¶ 80.)

In September 2013, plaintiff submitted paperwork to obtain a designation of line of duty injury. (Id. ¶ 98.) Plaintiff alleges that he was "prevented from having his injury designated" a line of duty injury and that "Defendants' failure to designate Plaintiff's injury as line of duty has prevented Plaintiff from collecting a salary or pension." (Id. ¶ 99.)

On May 2, 2013, plaintiff commenced this action against defendants alleging: (1) discrimination, retaliation, and hostile work environment in violation of the Americans with Disabilities Act, Section 1983, and New York state law; (2) violation of his Fourth Amendment rights under Section 1983; and (3) violations of New York state law including assault, battery, defamation, intentional infliction of emotional distress, and negligence. On September 10, 2013, plaintiff filed a complaint with the Equal Employment Opportunity Commission (the "EEOC"). Plaintiff subsequently filed an amended complaint on October 2, 2013, and a second amended complaint—the operative complaint in this case—on May 27, 2015.

## II.    DISCUSSION

### A.  Standard of Review

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff.  See Cleveland v. Caplaw Enters., 448 F.3d 518, 521 (2d Cir. 2006); Fed. R. Civ. P. 12(b)(6).  To survive a motion to dismiss, plaintiff must allege sufficient facts "to state a claim for relief that is plausible on its face."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).  A claim is facially plausible only "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556).  Mere labels and legal conclusions will not suffice.  Twombly, 550 U.S. at 555.  The plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant acted unlawfully."  Iqbal, 556 U.S. at 678. In determining the plausibility of a complaint, the court may consider documents that are "integral" to a complaint as long as: (1) the record is clear that "no dispute exists regarding the authenticity or accuracy of the document"; and (2) it is "clear that there exist no material disputed issues of fact regarding the relevance of the document."  Faulkner v. Beer, 463 F.3d 130, 134 (2d Cir. 2006).

### B.  Section 1983 Claims

Section 1983 provides a cause of action against any:

person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws.

42 U.S.C. § 1983.  "To properly plead a claim under the statute, a 'plaintiff must allege that some person has deprived him of a federal right' and 'that the person who has deprived him of that right

acted under color of state or territorial law.'"  Nesbitt v. Cnty. of Nassau, No. 05–CV–5513, 2006 WL 3511377, at *2 (E.D.N.Y. Dec. 6, 2006) (quoting Gomez v. Toledo, 446 U.S. 635, 640 (1980)).

### 1. Fourth Amendment Claim

Defendants argue that plaintiff cannot establish a Fourth Amendment claim because he fails to allege that a government seizure occurred.  (Defs.' Reply Br. at 1.)  Plaintiff contends that defendants violated his Fourth Amendment right to be free from unreasonable search and seizure when defendants staged the March 2011 "intervention," in which they directed plaintiff to report to the Setauket Fire House, where several officers surrounded him and screamed vulgar and discriminatory remarks at him.  (Compl. ¶ 56.)  Plaintiff argues that he has "plausibly pled that he was unlawfully seized, as he was surrounded and prevented from leaving the building by superiors in the Suffolk Police Department."  (Pl. Opp. at 18.)  However, the Complaint is devoid of any allegations that plaintiff was prevented from leaving the building.  The Court therefore grants defendants' motion to dismiss plaintiff's Fourth Amendment claim.

The Fourth Amendment prohibits "unreasonable searches and seizures." U.S. Const. amend IV.  A "seizure" for Fourth Amendment purposes occurs "when government actors have, 'by means of physical force or show of authority, . . . in some way restrained the liberty of a citizen.'"  Glass v. Mayas, 984 F.2d 55, 58 (2d Cir. 1993) (quoting Graham v. Connor, 490 U.S. 386, 395 n.10 (1989). The Supreme Court has held that "the protection against unreasonable searches and seizures fully applies in the civil context."  Soldal v. Cook Cnty., Illinois, 506 U.S. 56, 67 n.11 (1992); see also Glass, 984 F.2d at 58 ("That [the plaintiff's] seizure occurred in the civil context does not render the Fourth Amendment inapplicable.").

In a Section 1983 claim predicated on the Fourth Amendment, a threshold question is whether there has been a constitutionally cognizable search or seizure.  Medeiros v. O'Connell,

150 F.3d 164, 167 (2d Cir. 1998).  "Physical restraint or an assertion of authority to restrain a person's freedom of movement by law enforcement officers would, in most instances, constitute a seizure."  Pinto–Montoya v. Mukasey, 540 F.3d 126, 132 (2d Cir. 2008). A Fourth Amendment seizure occurs "when there is a governmental termination of freedom of movement through means intentionally applied."  Brower v. Cnty. of Inyo, 489 U.S. 593, 597 (1989) (emphasis in original).

Here, plaintiff has not pleaded any facts from which a reasonable person could conclude that he was seized for purposes of the Fourth Amendment.  Plaintiff merely alleges that he was directed to report to the Setauket Fire House, where several officers subsequently surrounded and screamed at him.  Nowhere in the complaint does plaintiff allege that he was prevented from leaving, physically restrained, threatened, or otherwise seized.  Therefore, plaintiff fails to state a claim under the Fourth Amendment and the Fourth Amendment claim is dismissed.

## 2.  Fourteenth Amendment Claims

Plaintiff alleges that defendants violated his Fourteenth Amendment rights of equal protection and due process.  (Compl. ¶ 108.)  In the motion to dismiss, defendants argue that plaintiff's allegations (1) cannot sustain a public employment "class of one" equal protection claim, and (2) do not support a due process claim because he failed to allege what process he was denied.  (Defs.' Br. at 5, 7.)  Plaintiff's opposition brief is entirely devoid of any mention of due process or equal protection violations.  Plaintiff offers no facts or legal argument suggesting that he was in fact subject to due process or equal protection violations.  The Court deems plaintiff to have abandoned his Fourteenth Amendment claims.  The Court therefore dismisses plaintiff's Fourteenth Amendment claims.

7

### C. <u>ADA Claims</u>

The ADA dictates that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to . . . [the] terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).  To establish a prima facie case of disability discrimination, Plaintiff must prove that: "(1) the defendant is covered by the ADA; (2) plaintiff suffers from or is regarded as suffering from a disability within the meaning of the ADA; (3) plaintiff was qualified to perform the essential functions of the job, with or without reasonable accommodation; and (4) plaintiff suffered an adverse employment action because of his disability or perceived disability." Capobianco v. City of New York, 422 F.3d 47, 56 (2d Cir. 2005).

#### 1. Statute of Limitations

Plaintiff's ADA discrimination, retaliation, and hostile work environment claims arising from conduct occurring prior to November 2012 are barred by the statute of limitations.  Prior to commencement of ADA litigation, a plaintiff must file administrative charges with the EEOC. Administrative charges must be filed within 300 days of the alleged discriminatory act.  42 U.S.C. § 12117; Forsyth v. Federation Empl. & Guidance Serv., 409 F.3d 565, 572 (2d Cir. 2005).  Failure to file an administrative charge with the EEOC within the 300 day period extinguishes the claim and prohibits recovery.  Butts v. New York Dep't of Housing Preservation & Dev., 990 F.2d 1397, 1401 (2d Cir. 1993).

Plaintiff submitted a complaint to the EEOC on September 10, 2013.  (Compl. ¶ 9.) Therefore, any conduct that occurred prior to November 14, 2012, i.e., 300 days prior to the filing of the EEOC complaint, cannot sustain his discrimination and retaliation claims.  See Harris v. City of New York, 186 F.3d 243, 247 (2d Cir. 1999) (finding that a discrete retaliatory or discriminatory act occurs at the time that it actually happens and accrues for statute of limitation

purposes when the individual knows or should have known of the injury).  Thus, any discrete

adverse action that occurred prior to November 2012 is time-barred.

Plaintiff contends that the "continuing violation" doctrine applies to his hostile work

environment claims, thus making timely events that occurred prior to the 300 day limitation period.

The Court disagrees.

The continuing violation doctrine extends the 300 day filing period in ADA cases alleging

a hostile work environment because "[h]ostile work environment claims are different in kind from

discrete acts.  Their very nature involves repeated conduct.  The 'unlawful employment practice'

therefore cannot be said to occur on any particular day.  It occurs over a series of days or perhaps

years."  Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 115 (2002).  When the continuing

violation doctrine applies, the court may consider "the entire time period of the hostile

environment," even though "some of the component acts . . . fall outside the statutory time period

. . . [p]rovided that an act contributing to the claim occur within the filing period."  Id. at 117, 122.

At least one act that is "part of the same actionable hostile work environment practice" must "fall[]

within the statutory time period."  Id. at 120, 122.

However, not all discriminatory acts are part of a continuing violation.  See Morgan, 536

U.S. at 120 (determining whether the continuing violation doctrine applies based on whether

incidents involved the same type of employment actions, occurred relatively frequently, and were

perpetrated by the same managers); Benson v. North Shore-Long Island Jewish Health Sys., 482

F. Supp. 2d 320, 330 (E.D.N.Y. 2007) ("Acts occurring outside the limitations period that are

significantly far apart from each other are 'fatal' to a continuing violation argument."); Quinn v.

Green Tree Credit Corp., 159 F.3d 759, 766 (2d Cir. 1998) (holding that the plaintiff could not

assert a continuing violation when there was a three year gap in time from one allegation to the

next).

Here, the continuing violation doctrine does not apply to plaintiff's hostile work environment allegations because the allegations involved are sufficiently different. The complaint alleges two distinct and separate claims of hostile work environment. First, the complaint alleges that fellow officers in the 6th Precinct, including Giganic, O'Shea, and Oswald, harassed plaintiff and created a hostile work environment between January 2009 and August 2011. This activity occurred outside of the 300 day limitations period and is time barred. In 2011, plaintiff was transferred to a different precinct where the second and distinct incident of hostile work environment began. Beginning in June 2013—and thus within the 300 day limitations period—plaintiff began experiencing harassing comments from Schneider. Although the complaint alleges that Schneider also worked with and harassed plaintiff while at the 6th Precinct, the complaint does not contain any details as to the nature or context of the alleged harassment by Schneider prior to June 2013. Based on the allegations in the complaint, this second claim for hostile work environment involves different perpetrators and was separated in time by nearly two years from the first claim. Therefore, while the alleged hostile work environment claim from June 2013 on is not time barred, it is not sufficiently connected to the pre-August 2011 hostile work environment claim for the continuing violation doctrine to save that earlier claim.

### 2. Discrimination Claim

The ADA prohibits discrimination against a "qualified individual on the basis of disability" in the "terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). To state a claim for discrimination under the ADA, a plaintiff must allege that: "(1) the defendant is covered by the ADA; (2) plaintiff suffers from or is regarded as suffering from a disability within the meaning of the ADA; (3) plaintiff was qualified to perform the essential functions of the job, with or without

reasonable accommodation; and (4) plaintiff suffered an adverse employment action because of [his] disability or perceived disability." Capobianco v. City of New York, 422 F.3d 47, 56 (2d Cir. 2005).

While a plaintiff need not specifically plead each element of a prima facie case of discrimination to survive a motion to dismiss, the standard provides a framework for analyzing whether the plaintiff's claims for relief are plausible. Dechberry v. New York City Fire Dep't, 124 F. Supp. 3d 131, 151 (E.D.N.Y. 2015). At the pleading stage, to state a claim of employment discrimination under the ADA, a plaintiff must plausibly allege that (1) his employer took an adverse action against him, and (2) the action was taken because of his disability or perceived disability. See Giambattista v. American Airlines, Inc., 584 F. App'x 23, 25 (2d Cir. 2014) ("To state a claim for discrimination under the ADA, a plaintiff must allege facts which plausibly suggest, inter alia, that she suffered [an] adverse employment action because of [her] disability." (internal quotations omitted)); see also Vega v. Hempstead Union Free School District, 801 F.3d 72 (2d Cir. 2015).

Here, plaintiff has not plausibly alleged that he suffered an adverse employment action because of his disability within the actionable time period. An "adverse employment action" is defined as a change in the terms and conditions of employment that is "materially adverse." Caskey v. Cnty. of Ontario, 560 F. App'x. 57, 59 (2d Cir. 2014) (internal quotation marks and citations omitted); see also Sherman, 71 F. Supp. 3d at 344 ("A materially adverse change is a change in working conditions that is more disruptive than a mere inconvenience or an alteration of job responsibilities."). Examples of adverse employment actions include termination, demotion evidenced by a wage or salary decrease, a "less distinguished title," material reduction of benefits, or a significant diminishing of the employee's material responsibilities. Id. However, an

11

individual's "bruised ego," reassignment to a position that is more inconvenient, or demotion that does not include a change in responsibilities, benefits, compensation, or prestige do not constitute material adverse employment actions.  Hong Yin v. North Shore-Long Island Jewish Health Sys., 20 F. Supp. 3d 359, 373 (E.D.N.Y. 2014).

The Court construes the complaint as asserting an ADA discrimination claim based on two alleged material adverse employment actions: (1) plaintiff was placed on administrative leave and desk duty (Compl. ¶ 75); and (2) plaintiff was "prevented from having his [PTSD] designated a 'line of duty' injury" (id. ¶ 99).  However, neither of these events are sufficient to sustain plaintiff's discrimination claim.

First, plaintiff's discrimination claim based on being placed on administrative leave is barred by the statute of limitations.  In the complaint, plaintiff alleges that he was placed on administrative leave and desk duty in November 2011.  As explained above, a discrete discriminatory act, such as being placed on administrative leave, that occurred prior to November 2012 cannot sustain plaintiff's discrimination claim.  The Court therefore dismisses the discrimination claim based on plaintiff being placed on administrative leave.

Second, although an adverse employment action may encompass a refusal to designate an injury as one obtained in the line of duty, plaintiff has not plausibly pleaded a discrimination claim based on his denial of line of duty injury status.  Plaintiff's allegations that defendants refused to designate his PTSD as a line of duty injury do not raise a plausible inference that the adverse employment action was a result of discrimination based on plaintiff's real or perceived disability. The complaint merely asserts that plaintiff submitted the proper paperwork and that plaintiff "has been prevented from having his injury designated a 'line of duty' injury" and that "Defendants' failure to designate Plaintiff's injury as line of duty has prevented Plaintiff from collecting a salary

12

or pension." (Id. ¶ 99.)   The complaint is devoid of detail regarding the line of duty injury designation, such as defendants' proffered reason for the denial and why that reason was wrong, unfair, or discriminatory.  The allegations in the complaint do not raise plaintiff's right to relief on the basis of disability discrimination "above the speculative level," Twombly, 550 U.S. at 555, since the complaint contains no facts suggestion an inference of discrimination.  See Vega, 801 F.3d at 72.

### 3.  Retaliation Claim

The ADA prohibits retaliation against an individual who has "opposed any act or practice made unlawful under the ADA." 42 U.S.C. § 12203.  To establish a prima facie case of retaliation, a plaintiff must show that "(1) he engaged in an activity protected by the ADA; (2) the employer was aware of this activity; (3) the employer took adverse employment action against him; and (4) a causal connection exists between the alleged adverse action and the protected activity." Treglia v. Town of Manlius, 313 F.3d 713, 719 (2d Cir. 2002).  With respect to protected activity, "[a] complaint can be informal—an employee does not need to lodge a formal complaint of discrimination." Bowen–Hooks v. City of New York, 13 F. Supp. 3d 179 (E.D.N.Y. 2014).

While plaintiff fails to clearly identify his protected activity, he could be referring to: (1) plaintiff's complaints about harassment by O'Shea, (Compl. ¶ 40); (2) plaintiff's complaints to his union delegate regarding the memo book incident, (id. ¶ 59); (3) plaintiff's complaints about harassment by Schneider and subsequent request for a transfer, (id. ¶¶ 83, 94); (4) plaintiff's filing complaints of employment discrimination with the EEOC on September 10, 2013, (id. ¶ 104); or (5) the filing of the instant action on May 2, 2013.

Protected activity "refers to action taken to protest or oppose statutorily prohibited discrimination." Cruz v. Coach Stores, Inc., 202 F. 3d 560, 566 (2d Cir. 2000); see also Galdieri–

Ambrosini v. Nat. Realty & Dev. Corp., 136 F.3d 276, 292 (2d Cir.1998) (holding that an employee who complained about having to perform personal tasks for an executive did not express her opposition to gender discrimination).  Although plaintiff filing a federal lawsuit and complaint to the EEOC constitute protected activity, plaintiff's allegations do not demonstrate that his earlier complaints of bullying and harassment were or could reasonably have been interpreted to be about conduct protected by the ADA.  With respect to plaintiff's complaints to the Internal Affairs Bureau about O'Shea's harassment, the pleadings allege that plaintiff complained about O'Shea's harassing behavior, such as his inappropriate questions about whether plaintiff had children and comments about plaintiff's girlfriend.  With respect to plaintiff's complaints to his union representative, the pleadings allege that plaintiff's complaint was based on an incident in which certain defendants sent plaintiff's memo book to Oswald.  With respect to plaintiff's complaints about Schneider's harassment, the pleadings allege that plaintiff's complaints focused on harassment relating to plaintiff's former girlfriend.  Such harassment that is completely unrelated to plaintiff's perceived or actual disability is not statutorily prohibited discrimination under the ADA and thus cannot be the basis for protected activity.

Thus, plaintiff's only protected activity constituted pursuing a federal lawsuit and his complaints to the EEOC.  The only alleged adverse employment action that occurred after plaintiff filed his complaint with the EEOC is plaintiff being prevented from having his injury designated as line of duty.  Plaintiff's retaliation claim fails because he does not plausibly allege facts that give rise to a plausible causal nexus between the alleged adverse employment action and plaintiff's protected activity.  See Anderson v. Davis Polk & Wardwell LLP, 850 F. Supp. 2d 392, 413 (S.D.N.Y. 2012) (dismissing retaliation claims where there was "nothing to connect [plaintiff's] complaint . . . and the self-described retaliatory actions aside from the fact that plaintiff groups

14

these actions underneath the heading of 'retaliation' in his [pleadings]"). Causation may be shown: "(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." Gordon v. N.Y. City Bd. of Educ., 232 F.3d 111, 117 (2d Cir. 2000).

Here, plaintiff's complaint and opposition brief are entirely devoid of any factual or legal assertions as to the causal connection between plaintiff filing a complaint to the EEOC and subsequent lawsuit and his denial of line of duty injury status. "Simply pleading that an adverse employment action occurred later in time than plaintiff's protected activity is insufficient to survive a motion to dismiss." Dechberry v. New York City Fire Dep't, 124 F. Supp. 3d 131, 154 (E.D.N.Y. 2015); see also Mandavia v. Columbia Univ., 912 F. Supp. 2d 119, 133–34 (S.D.N.Y. 2012) (granting motion to dismiss when complaint did not allege specific facts that could give rise to a plausible inference of retaliatory motive and declining to infer retaliatory motive because defendant's adverse action occurred later in time than his EEOC complaint). As discussed previously, plaintiff's complaint provides sparse information about the denial of line of duty injury status.

The Court finds that plaintiff has failed to plausibly allege that any adverse action he suffered was casually related to his engaging in ADA-protected activity, and therefore the Court dismisses plaintiff's ADA retaliation claim.

### 4. Hostile Work Environment Claim

To sustain a claim for hostile work environment under the ADA, a plaintiff "must plead facts that would tend to show that the complained of conduct: (1) is objectively severe or

15

pervasive—that is, . . . creates an environment that a reasonable person would find hostile or abusive; (2) creates an environment that the plaintiff subjectively perceives as hostile or abusive; and (3) creates such an environment because of the plaintiff's [disability]." Patane v. Clark, 508 F.3d 106, 113 (2d Cir. 2007). Plaintiff's complaint need not establish a prima facie case of hostile work environment at this stage but "only enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570.

"Hostile work environment claims are meant to protect individuals from abuse and trauma that is severe. They are not intended to promote or enforce civility, gentility or even decency." Curtis v. DiMaio, 46 F. Supp. 2d 206, 213–14 (E.D.N.Y. 1999). "As a general rule, incidents must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive." Terry v. Ashcroft, 336 F. 3d 128, 148 (2d Cir. 2003). Whether a workplace is an unlawful hostile work environment under the ADA requires consideration of the totality of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it [was] physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interfere[d] with [the plaintiff's] work performance." Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993). Considering these and other factors and the totality of the circumstances, the Court finds that plaintiff has failed to state a hostile work environment claim under the ADA.

As explained above, plaintiff's hostile work environment claims regarding incidents occurring between January 2009 and August 2011 are time barred and therefore must be dismissed. The Court will thus only address plaintiff's hostile work environment claim beginning in June 2013, which relates to Schneider's alleged harassing comments and conduct. This claim fails.

The complaint alleges that beginning in June 2013, Schneider harassed plaintiff, stating that plaintiff's doctor "says [plaintiff] watch[es] too many zombie movies" and that plaintiff

16

fabricated the incident regarding O'Shea and the memo book.  (Compl. ¶ 79.)  The complaint

further alleges that in July 2013 Schneider said to plaintiff:  "they put you in a car and beat you up

. . . you're a wimp.  I was in the back of the car . . . you raped my wife Rachel [ ]" and "I'm going

to talk to Chief Burke and tell him to psych you out . . . you are not a Christian . . . you are

possessed."  (Id. ¶ 80.)  The complaint also alleges that following this exchange, Schneider

"attempted to punch Plaintiff in the face, which Plaintiff was luckily able to dodge."  (Id.)  The

complaint later alleges, regarding what the Court assumes was the same incident, that plaintiff was

informed by a different officer that "Schneider had been punching [plaintiff] in the head while

Plaintiff was on the floor during the July 11 incident," although plaintiff has no recollection of this

because he "'blacked out' due to his PTDS condition."  (Id. ¶ 93.)

   The complaint does not allege facts that are objectively severe or pervasive to state a claim

for hostile work environment.  These "[i]solated, minor acts or occasional episodes do not warrant

relief" under a hostile environment theory.  Brennan v. Metro. Opera Ass'n, 192 F.3d 310, 318 (2d

Cir. 1999).  Here, plaintiff has alleged two isolated incidents involving comments and actions from

one individual that occurred over the course of two months.  With respect to the July 11 incident,

the complaint is ambiguous and unclear as to how the events unfolded and whether plaintiff was

in fact punched.  These allegations are not "sufficiently continuous and concerted in order to be

deemed pervasive," Terry, 336 F. 3d at 148, and are insufficient to state a plausible claim that

plaintiff's workplace was so "permeated with discriminatory intimidation, ridicule, and insult" so

as to alter the conditions of plaintiff's employment.  Harris, 510 U.S. at 21; See Giambattista v.

Am. Airlines, Inc., 5 F. Supp. 3d 284, 294 (E.D.N.Y.) (finding complaint failed to state a claim

for hostile work environment went it alleged, inter alia, that plaintiff's coworkers made offensive

quips about her perceived disability, such as calling her crazy and implying she should be taken

17

away by psychiatrists, and a coworker groped her on one occasion), aff'd, 584 F. App'x 23 (2d Cir. 2014).

Moreover, the complaint does not contain allegations that any hostile actions were taken because of plaintiff's real or perceived disability, and plaintiff's opposition brief is devoid of facts or legal arguments to the contrary. Parekh v. Swissport Cargo Services, Inc., No. 08-CV-1994, 2009 WL 290465, at *5 (E.D.N.Y. Feb. 5, 2009) ("Although [t]he incidents comprising a hostile work environment claim need not make reference to any trait or condition on the basis of which the discrimination has occurred, they must occur under circumstances in which the incidents can reasonably be interpreted as having taken place on the basis of that trait or condition." (internal quotation marks omitted)).

The Court finds that plaintiff has failed to plausibly allege that he was subjected to a hostile work environment in violation of the ADA, and therefore the Court dismisses plaintiff's ADA hostile work environment claims.

## D.  Supplemental Jurisdiction Over State Law Claims

Having found that plaintiff's Section 1983 and ADA claims fail as a matter of law, there is no longer any independent basis for federal jurisdiction in this action. Although the Court has the discretion to exercise supplemental jurisdiction over plaintiff's remaining NYSHRL and other state law claims, see 28 U.S.C. § 1367(a), the Court declines to do so. See 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction."); Marcus v. AT&T Corp., 138 F.3d 46, 57 (2d Cir. 1998) ("In general, where the federal claims are dismissed before trial, the state claims should be dismissed as well."). Therefore, the Court dismisses the remaining state law claims without prejudice.

## III.    CONCLUSION

For the reasons set forth above, defendant's motion to dismiss is granted as to the Section 1983 and ADA claims and the Court declines to grant supplemental jurisdiction over the remaining state law claims.

**SO ORDERED.**

Date: September 6, 2016
Central Islip, New York

_____/s/ (JMA)_____
Joan M. Azrack
United States District Judge